```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

JOSE PEREZ,                         :
        Petitioner,                 :
                                    :
v.                                  :    Crim. No. 3:97cr48 (AHN)
                                    :    Civ. No. 3:02cv708 (AHN)
UNITED STATES OF AMERICA,           :
        Respondent.                 :
```

RULING ON PETITION FOR A WRIT OF HABEAS CORPUS

On April 30, 1998 a jury convicted petitioner Jose Perez ("Perez") of various racketeering and drug-trafficking charges, and the court sentenced him to 20 years imprisonment.  He appealed his conviction, and the Second Circuit affirmed.  See United States v. Perez, 99-1151, 2000 U.S. App. LEXIS 31506 (2d Cir. Dec. 7, 2000).  Perez now petitions the court for a writ of habeas corpus [doc # 1407], pursuant to 28 U.S.C. § 2255, alleging that (1) he received ineffective assistance of counsel, and (2) his sentence violates the rule in Apprendi v. New Jersey, 530 U.S. 466 (2000), because the court, and not a jury, determined the quantity and type of drugs that he distributed.  The court concludes that Perez's challenges to his conviction and sentencing are without merit, and thus the petition for a writ of habeas corpus [doc # 1407] is DENIED.

BACKGROUND AND PROCEDURAL HISTORY

Perez, also known as "Cobra," was an "enforcer" for the Latin Kings street gang, whose members trafficked drugs and committed numerous other crimes.  In December 1997, a grand jury

indicted Perez for racketeering, racketeering conspiracy, Violent Crimes in Aid of Racketeering, and conspiracy to distribute narcotics.  In April 1998, a petit jury found Perez guilty of these four counts.  The court sentenced him to three terms of 20 years imprisonment and one term of 10 years imprisonment, all of the sentences to run concurrently.

Perez appealed his conviction to the Second Circuit, alleging that the district court erred in (1) restricting cross-examination of a police witness; (2) admitting evidence of uncharged crimes; (3) permitting the government to refer to facts not in the record in its closing argument; and (4) refusing to grant an acquittal on the narcotics conspiracy charge.  See Perez, 2000 U.S. App. LEXIS 31506, at *2.  The Second Circuit rejected these arguments and affirmed Perez's conviction.  See id. at *1.

## DISCUSSION

Perez now collaterally challenges his conviction and sentence on two grounds.  First, he contends that he received ineffective assistance of counsel concerning his attorney's handling of a proposed plea agreement, the calculation of Perez's criminal history in the Pre-Sentence Report ("PSR"), and counsel's selection of issues for appeal.  Second, he maintains that his sentence was based on a finding of drug type and quantity made "by the court, instead of the jury, which exposed

[him] to a sentence greater than that authorized by the jury's verdict." The government counters that Perez's counsel did advise him of the government's plea offer, and that Perez's conclusory allegations do not establish that his counsel's performance was deficient under Strickland v. Washington, 466 U.S. 668 (1984). The government argues that Apprendi does not apply to Perez because the court never enhanced his sentence beyond the statutory maximum. The court agrees that Perez's claims are meritless.

I. Ineffective Assistance of Counsel

To prevail as a habeas petitioner on a claim of constitutionally inadequate counsel, Perez must overcome the strong presumption that counsel provides effective assistance. See Strickland, 466 U.S. at 688. The Second Circuit has repeatedly "declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised." See Loliscio v. Goord, 263 F.3d 178, 195 (2d Cir. 2001). Under Strickland, a habeas petitioner claiming ineffective assistance of counsel must make a two-part showing. First, the petitioner must demonstrate that counsel's performance was deficient -- that is, errors were made of such serious magnitude that the petitioner was deprived of the counsel guaranteed by the Sixth Amendment. See Strickland, 466 U.S. at 687. Second, the petitioner must show that there is a reasonable

probability that, but for counsel's deficient performance, the result would have been different.  See id. at 694.

Perez contends that his counsel was ineffective on a number of grounds.  He maintains that the representation he received was deficient because his appointed counsel failed to ensure that he "was aware of the consequences of a trial, and failed to adequately advise him as to whether to accept a proposed plea agreement that called for a greatly reduced sentence."  He also argues that counsel made two errors with regard to Perez's PSR -- he failed to object to the PSR's calculation of his criminal history, and although counsel did object to his enhancement for possession of a weapon, he did not pursue the issue on appeal.[1]  The court concludes that Perez has not shown that his representation on these matters was in any way deficient as Strickland requires.[2]

---

[1] Perez's § 2255 petition raises only the first ground discussed here for ineffective assistance of counsel -- that counsel failed to advise him of the consequences of proceeding to trial.  Perez's other challenges to the competence of his attorney appear in his supplement [doc # 1519] to his petition, filed February 13, 2006 with permission of the court.

[2] Perez's supplement [doc # 1519] to his § 2255 petition also contends that counsel provided ineffective representation because he failed to raise a Sixth Amendment challenge to the court's finding of the quantity and type of drugs involved for purposes of his sentencing.  This claim faults counsel for failing to pursue the Apprendi issue.  The court has treated Perez's Apprendi argument as a separate substantive argument in support of his § 2255 petition distinct from its basis for the ineffective assistance of counsel claim, see infra.  Because the court determines that Perez's sentence does not violate Apprendi,

A. <u>Explanation of Consequences of Going to Trial</u>

Perez argues that his counsel failed to inform him "of the consequences of a trial, and failed to adequately advise him as to whether to accept a proposed plea agreement that called for a greatly reduced sentence." Perez offers no details whatsoever to support his allegations. Presumably, he refers to Assistant United States Attorney Joseph Martini's January 16, 1998 letter offering a plea bargain whereby Perez would plead guilty to racketeering in exchange for dismissal of the remaining counts against him.

As the government points out, however, there is no reason to suppose that counsel did not communicate this proposed plea agreement to Perez or that counsel failed to inform him of the risks of rejecting the deal and proceeding to trial. In an affidavit attached to the government's response [doc # 1454], Perez's counsel, David Wenc ("Wenc"), indicates that he mailed Perez a copy of the proposed plea agreement on January 22, 1998. Wenc advised Perez to accept the plea agreement because "it would greatly reduce his exposure to a lengthy term of incarceration." Perez, however, insisted that he was innocent, rejected Wenc's advice, and proceeded to the trial at which he was convicted.

These communications demonstrate that counsel did inform

---

the court concludes that counsel was not deficient in failing to
raise this issue with the court at sentencing.

Perez about the government's proposed plea agreement and the advantages of accepting it.  Perez's decision to proceed to trial stemmed not from his reliance on the incompetent advice of counsel but instead from Perez's refusal to rely on the competent advice of counsel.

    B.   <u>Failure to Object to Calculation of Criminal History</u>

Perez also contends that he received ineffective assistance of counsel because his attorney failed to object at sentencing to the PSR's placement of Perez in criminal history category III. Specifically, he claims that the PSR erroneously treated his sentences for two state offenses as unrelated and assigned him one point for each, instead of treating them as one sentence for related offenses.  The court disagrees, and determines that Perez's counsel did not show any incompetence, let alone such incompetence as would satisfy <u>Strickland</u>, in failing to object to this calculation.

The Sentencing Guidelines provide that for purposes of computing a defendant's criminal history, "[p]rior sentences imposed in unrelated cases are to be counted separately," while "[p]rior sentences imposed in related cases are to be treated as one sentence . . ."  U.S. Sentencing Guidelines Manual § 4A1.2(a)(2) (1998).  The application notes explain that "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest (<u>i.e.</u>, the defendant

6

is arrested for the first offense prior to committing the second offense)."  Id. application note 3.  Perez contends that he was arrested for failure to appear in Connecticut state court on March 30, 1989, and that on October 24, 1989, while he remained incarcerated, he was charged with larceny.  He appears to argue that the fact he was already in custody when he was charged with larceny means that the two offense were not "separated by an intervening arrest," and thus the sentences were for related offenses.

    Perez's argument is illogical.  The proposition that an intervening arrest demonstrates that two offenses are unrelated does not support the proposition that the lack of an intervening arrest demonstrates that two offenses are related.  Perez's logic would dictate that if, for example, an inmate convicted of tax evasion were to assault a prison guard, his sentences for tax evasion and assault would be considered related for purposes of determining his criminal history because the inmate remained incarcerated and there was thus no intervening arrest.  Perez presents no evidence that his failure to appear and larceny convictions should be considered separate offenses under § 4A1.2(a)(2), and his counsel was not ineffective for failing to object at sentencing to the PSR's calculation of his criminal history.

C.  Selection of Issues for Appeal

Perez also challenges the competency of his counsel because of the issues counsel chose to raise on appeal.  The PSR recommended an increase of two points in Perez's base offense level for possession of a dangerous weapon.  Perez's counsel objected to this calculation at sentencing, but did not raise the issue on appeal.  Perez contends that his counsel's performance was deficient for failing to pursue this issue with the Second Circuit.  The court disagrees.

It is well-established that a defendant has no constitutional right to select which issues his attorney must raise on appeal. See Jones v. Barnes, 463 U.S. 745, 750-51 (1983).  In fact, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." See Smith v. Murray, 477 U.S. 527, 536 (1986).  Perez's counsel was entirely reasonable in judging that this court's application of § 2D1.1 of the Sentencing Guidelines would not be grounds for reversal of the sentence.  A "sentencing court's finding that a firearm was possessed in connection with a drug offense for purposes of § 2D1.1 will not be overturned unless it is clearly erroneous." See United States v. Santiago, 384 F.3d 31, 33 (2d Cir. 2004).

In fact, this court's application of a § 2D1.1 adjustment to

Perez's sentence was correct. The Sentencing Guidelines provide that a defendant's base offense level is to be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed." U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (1998). The application notes explain that the "adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Id. application note 3. The plain language of § 2D1.1(b)(1) indicates that the adjustment does not require that the defendant intend to use weapons in the course of his drug-trafficking. See Santiago, 384 F.3d at 33 (possession of the weapon need only be "relevant" to the drug-trafficking activity). Rather, the notes observe that the adjustment "reflects the increased danger of violence when drug traffickers possess weapons." U.S. Sentencing Guidelines Manual § 2D1.1, application note 3 (1998)(emphasis added). Perez thus concedes in his petition that the adjustment was warranted because he brought a book bag of firearms to the drug block. It is immaterial that a co-defendant told him that the firearms would not be needed. In bringing the firearms to the drug block, Perez increased the danger of violence, even if after speaking with his co-defendant he had no intent to use them.[3] Thus, Perez's counsel was not remiss for failing to

---

[3] Perez also contends that his weapons "were not connected to the sales of controlled substances;" rather, they were "for use in 'missions' against rival gangs." However, the use of

pursue this issue on appeal.

II. Apprendi Claim

Perez also argues that his sentencing violates Apprendi because the court sentenced him based on its own finding, rather than that of a jury, as to the quantity and type of drugs involved in the conspiracy. The government responds that Apprendi only prevents the court from enhancing a defendant's sentence beyond the statutory maximum based on facts not found by a jury, and that Perez was sentenced only to the statutory maximum. The court agrees.

The Supreme Court's holding in Apprendi was, as the government correctly observes, far narrower than Perez contends. The Court did not declare any enhancement of a defendant's sentence based on facts found by a judge rather than a jury to violate the Sixth Amendment. See United States v. Booker, 543 U.S. 220, 240 (2005)("there are many situations in which the district judge might find that the enhancement is warranted, yet still sentence the defendant within the range authorized by the jury"). Rather, the Apprendi court held only that "[o]ther than the fact of a prior conviction, any fact that increases the

---

weapons in protecting the Latin Kings' turf against rival drug-traffickers also provides a sufficient nexus to support the court's § 2D1.1 adjustment. See United States v. Santiago, 384 F.3d 31, 34 (2d Cir. 2004) (upholding the application of a § 2D1.1 adjustment where the defendant "possessed the firearms to protect his drug-related activities").

penalty for a crime <u>beyond the prescribed statutory maximum</u> must be submitted to a jury, and proved beyond a reasonable doubt." <u>See</u> <u>Apprendi</u>, 530 U.S. at 490 (emphasis added).

This court, however, sentenced Perez to exactly the statutory maximum and nothing more.  Congress has provided that one who is convicted of distributing Schedule I or II controlled substances "shall be sentenced to a term of imprisonment of not more than 20 years," <u>see</u> 21 U.S.C. § 841(b)(1)(c), and this court sentenced him to 20 years, to run concurrently with the other 20-year sentences Perez received for his racketeering activities.  Perez's sentence, therefore, does not violate the Sixth Amendment as interpreted by <u>Apprendi</u>.

<u>CONCLUSION</u>

For the foregoing reasons, Perez's petition for a writ of habeas corpus [doc # 1407] is DENIED.  Because petitioner fails to make a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.  <u>See</u> 28 U.S.C. § 2253.

So ordered this 10th day of July, 2006, at Bridgeport, Connecticut.

```
            _____/s/_____
            Alan H. Nevas,
            United States District Judge
```

11